IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| WANDA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-4133-CV-C-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in August 1961, has a tenth grade education, and has prior work experience as a kitchen helper, cashier, custodian, deli clerk, and counter clerk. She filed her applications for disability benefits under Title II and Supplemental Security Income Benefits under Title XVI in April 2009. She initially alleged an onset date of September 1, 2006, but the onset date was amended to November 6, 2008, to resolve an overlap with her previously-filed (and denied) applications. E.g., R. at 31-32. Plaintiff alleges she became disabled on that date due to a combination of plantar fasciitis, obesity, carpal tunnel syndrome, degenerative disc disease, osteoarthritis in her knees, and depression.

A.  Before the Onset Date

The Record contains medical evidence from before the relevant time period; some of this evidence will be mentioned, but the Court will focus on the medical evidence related to period of time after her amended onset date.  An MRI performed in May 2005 revealed spondylosis and mild to moderate spinal canal stenosis at C5-6.  R. at 248.  An examination in May 2005 revealed limited range of motion and diminished strength in her right shoulder.  Plaintiff also reported feeling "very depressed" because she had moved back into her parents' home following an abusive relationship.  R. at 247.  She continued reports of depression throughout 2005.  R. at 243-45.  In May 2006, Plaintiff was involuntarily admitted to Mid-Missouri Mental Health Center and placed on suicide observation.  Records indicate she attributed her suicidal thoughts to relapsing on cocaine and marijuana.  Within a week Plaintiff was discharged with instructions to live at Harbor House and participate in weekly follow-ups.  By June, she was living with her parents again.  R. at 242-50.  In September, her treating doctor (Dr. Modesta Tako) described her depression as stable.  R. at 241.

In October 2006, Plaintiff complained of pain in her knee and shoulder and an inability to perform the lifting necessary for her housekeeping job.  She was prescribed tramadol.  R. at 239.  In August 2007, Plaintiff went to the emergency room complaining of foot pain.  X-rays revealed swelling, but no fractures, dislocations, or other abnormalities relating to her bones; she was prescribed ultram.  R. at 227-29, 233.  That same month she complained of pain in her left heel, at which time she was diagnosed as suffering from plantar fasciitis.  She was prescribed a non-steroidal anti-inflammatory and told to stay off her foot and ice it.  R. at 223-24.  Plaintiff returned to the hospital in January 2008, complaining of pain in her heel and right wrist.  She was told to use a heel cup and was prescribed anti-inflammatory medication.  R. at 236.  In March 2008 Plaintiff again complained of pain and swelling in her foot and pain in her elbow.  She was advised to wear a "post op shoe for comfort" and to take Motrin.  R. at 218-19.  She returned to the hospital within a week and was told to use a heel cup.  R. at 235.

In September 2008, Plaintiff went to the hospital complaining of knee pain.  She described an incident in which she had twisted her knee while getting out of a chair.  X-

2

rays revealed some degenerative changes and mild joint space narrowing. She was diagnosed as suffering from a knee sprain and told to immobilize the knee, use crutches, and take naproxen. R. at 209-17.

This represents the last medical record before Plaintiff's onset date.

### B. After the Onset Date

As stated earlier, Plaintiff's amended onset date was November 6, 2008. However, her first visit to a medical practitioner after that date was in mid-May, 2009. Plaintiff went to Family Health Center complaining of pain in both heels and her right shoulder, obesity, and diabetes. She reported that she never refilled any of the prescriptions for anti-inflammatories, so new prescriptions were written. (Plaintiff's contention that the nurse practitioner who saw Plaintiff performed some form of testing is not supported by the Record). R. at 252-55. On June 1, Plaintiff saw a podiatrist (Dr. Thomas Brant), who diagnosed Plaintiff as suffering from plantar fasciitis in both heels. He recommended Plaintiff perform stretching exercises, use an over-the-counter arch support, avoid walking barefooted, lose weight, and consider obtaining custom-made orthotic inserts for her shoes. Dr. Brant also administered an injection in Plaintiff's right heel. R. at 351-52.

Approximately two weeks later, Plaintiff underwent a consultative examination performed by Dr. Anthony Zeimet. Plaintiff told Dr. Zeimet "she has not really been depressed over the last 2 years, and therefore, this is no longer a problem for her." His review of Plaintiff's records and examination of Plaintiff caused Dr. Zeimet to opine that Plaintiff suffered from plantar fasciitis and morbid obesity. With regard to the former, he described the condition as "temporary" that would improve "with proper foot care; wearing sole inserts, proper stretching of the fascia as directed by her podiatrist, use of NSAIDs and periodic steroid injections." Dr. Zeimet indicated Plaintiff might suffer from carpal tunnel syndrome based on her report of symptoms, but "provocative testing" did not confirm the condition and further diagnosis would require Plaintiff to undergo an EMG. Dr. Zeimet also indicated Plaintiff might have osteoarthritis in her knees (again, based on her report of symptoms), but if so "[i]t is very mild. It is not evident on physical

3

exam." He concluded Plaintiff could sit, stand and walk sufficiently to allow her to walk an eight hour day, and found "no physical limitation as to why she cannot carry more than 10 pounds as she self reports." R. at 257-60.

In July, Plaintiff went to the hospital complaining of pain and swelling in her left (not right) knee. Examination revealed moderate tenderness in her left knee, and she was prescribed Percocet. R. at 345-47. She returned to the hospital later that month, complaining that "walking, standing or sitting . . . aggravates" the pain in her knees. Examination and x-rays revealed no abnormalities, and the doctor indicated plans to obtain an MRI for the left knee. R. at 340-41. The MRI revealed a tar in the meniscus, evidence of a bone bruise, and edema. R. at 336-37. However, there are no medical records addressing treatment. The next, and last, medical record is from December 2009, at which time Plaintiff complained of neck pain. No swelling was noted and she was prescribed Flexeril. R. at 331-35.

In February 2010, Plaintiff submitted a form in connection with the instant application indicating she had not seen a doctor since July 30, 2009, that she was not taking prescription medication, and the only nonprescription medication she was taking was "Ibuprofen for swelling and [A]leve or [A]dvil for pain." R. at 361-62.

## C. Testimony During the Hearing

The hearing was held on October 19, 2010. Plaintiff said the medical condition that caused her the most trouble was her feet, particularly the right foot. She testified she could not walk, stand, or put pressure on the foot. She described a constant pain that precluded her from standing for more than fifteen minutes. R. at 44-45. Plaintiff also described pain in her knees that makes it difficult to bend, stoop, or sit. R. at 46. The combination of pain in her knees and heel required her to lie down and elevate her legs five to six times per day for indeterminate periods of time without medication, and for an hour at a time if she was taking over-the-counter medication. R. at 46-47. Plaintiff also testified that she is still depressed, which causes her to be "alienated and aggravated." R. at 47-48. Finally, Plaintiff testified that she experienced pain, tingling

4

and numbness in her right hand on a daily basis, which precluded her from using that hand for extensive periods of time. R. at 48-49.

The ALJ elicited testimony from a vocational expert ("VE"). In the first hypothetical, the VE was asked to assume a person of Plaintiff's age, education, and work experience who was limited in the manner described in Dr. Zeimet's opinion. The VE testified such a person could return to their past relevant work. R. at 50-51. The second hypothetical asked the VE to assume the person was limited essentially in the manner described in Plaintiff's testimony; the VE testified such a person could not perform their past work or any other jobs in the national economy. R. at 52-53.

### D. The ALJ's Decision

The ALJ found Plaintiff was limited in the manner described in Dr. Zeimet's opinion and, based on the VE's testimony, further found Plaintiff was not disabled on or after November 6, 2008. In finding Plaintiff's testimony to not be fully credible, the ALJ noted (1) she was not prescribed pain medication and was taking over-the-counter medication, (2) the medical evidence did not document a basis for impairments of the severity she described, (3) the medical evidence did not document Plaintiff reported impairments of the severity she described, and (4) the sporadic nature of Plaintiff's efforts to obtain medical treatment. R. at 17-18.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v.

5

Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Depression

Plaintiff first argues the ALJ erred in failing to include depression as a severe impairment at the second step of the five-step sequential process. For a mental impairment to be severe, the ALJ must consider the four functional areas identified in the regulations and determine whether "there is more than a minimal limitation on your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); see also Buckner v. Astrue, 646 F.3d 549, 556-57 (8th Cir. 2011). Here, there is no evidence Plaintiff suffered from depression or other mental impairments after the alleged onset date. Plaintiff points to the evidence of her hospitalizations, but they all occurred well before November 2008. She was not receiving treatment or taking medication after the onset date. The last doctor to address her depression (in September 2006) described her condition as "stable," and she denied having any problems related to depression when she saw Dr. Zeimet in June 2009. Substantial evidence supports the ALJ's conclusion that Plaintiff did not suffer from a severe mental impairment on or after November 6, 2008.

### B. Evaluation of Plaintiff's Credibility

Plaintiff argues the ALJ did not properly evaluate her credibility, but the argument essentially posits nothing more than the observation that the ALJ's findings are contradicted by Plaintiff's testimony. Obviously, this fact – alone – does not establish error.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The

6

familiar standard for analyzing a claimant's subjective complaints of pain is set forth in
<u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the
> disability results from a medically determinable physical or
> mental impairment, direct medical evidence of the cause and
> effect relationship between the impairment and the degree of
> claimant's subjective complaints need not be produced. The
> adjudicator may not disregard a claimant's subjective
> complaints solely because the objective medical evidence
> does not fully support them.
>
> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
>     1. The claimant's daily activities;
>     2. the duration, frequency and intensity of the pain
>     3. precipitating and aggravating factors;
>     4. dosage, effectiveness and side effects of
>     medication;
>     5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. While current regulations incorporate these considerations, the Eighth Circuit has declared that the "preferred practice" is to cite <u>Polaski</u>. <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007).

    The ALJ acknowledged Plaintiff's plantar fasciitis, knee problems, and complaints of pain in her right arm. However, the ALJ justifiably considered the following facts in ascertaining the extent of Plaintiff's pain: (1) she was not prescribed pain medication and was taking over-the-counter medication, (2) the medical evidence did not document a basis for impairments of the severity she described, (3) the medical evidence did not

7

document Plaintiff reported impairments of the severity she described, and (4) Plaintiff only sporadically sought medical treatment. All of these are factors that may be considered under Polaski and other cases. E.g., Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994) (discussing consideration of pain medication prescribed). The ALJ's credibility assessment was supported by substantial evidence in the Record as a whole.

### C. Determination of Residual Functional Capacity

The ALJ determined Plaintiff's RFC was the same as Dr. Zeimet's opinion. Plaintiff argues this finding is inconsistent with the ALJ's determination of Plaintiff's severe impairments at step two of the process, and faults the ALJ for specifying or linking each limitation to a particular ailment. This degree of specification is not required, so there is no error. Dr. Zeimet was the only doctor to provide any assessment of Plaintiff's functional capacity, see R. at 33-35, and that opinion is supported not only by Dr. Zeimet's findings but all the findings that can be gleaned from Plaintiff's treating doctors.

Plaintiff also alleges error based on the ALJ's written statement that Plaintiff could perform heavy work. R. at 16. This finding seems unlikely, as it implies Plaintiff could lift one hundred pounds occasionally and fifty pounds regularly. 20 C.F.R. §§ 404.1567(d), 416.967(d). However, the Court discerns no reason to reverse the Commissioner's final decision for three reasons. First, the ALJ did not include such a provision in the first hypothetical question posed to the VE: the RFC was derived entirely from Dr. Zeimet's narrative. Second, based on that narrative, the VE testified Plaintiff could return to her past relevant work. Third, with the exception of the reference to Plaintiff's ability to perform heavy work, the ALJ adopted findings entirely consistent with Dr. Zeimet's narrative and the VE's testimony. Thus, the finding about heavy lifting plays no role in the ALJ's ultimate conclusion that Plaintiff can return to her past work. For these reasons, reversal is not called for.

8

## III. CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 22, 2013\                 UNITED STATES DISTRICT COURT